Phillip SANTORO, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 20412.

United States Court of Appeals
Ninth Circuit.

Dec. 27, 1967.

**114**

Richard F. LeFevour, Robert S. Bailey, Oak Park, Ill., for appellant.

Cecil F. Poole, U. S. Atty., San Francisco, Kirby W. Patterson, Attorney, Department of Justice, Washington, D. C., for appellee.

Before MADDEN, Judge, United States Court of Claims, and BARNES and MERRILL, Circuit Judges.

BARNES, Circuit Judge:

Phillip Santoro was tried and convicted upon an indictment charging him with conspiracy to transport stolen vehicles (18 U.S.C. § 371), the interstate transportation of a stolen motor vehicle (18 U.S.C. § 2312), and knowingly selling a stolen motor vehicle moving in or a part of interstate commerce (18 U.S.C. § 2313). The district court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction of the appeal under 28 U.S.C. § 1291.

Santoro, together with Joseph Coduto, Peter LaMagna and Dorothy Haynes, was engaged in marketing stolen cars. The operation involved the theft of Cadillac automobiles in the Chicago area, their transportation to the West Coast, the alteration of the vehicle identification numbers and the sale to used car dealers in California. From April through July of 1963, six Cadillacs were stolen in the Chicago area. In April of 1963 two of them were sold by codefendant Haynes to a dealer in Oakland, California. Six weeks later appellant Santoro, using the name Cassar, and Mrs. Haynes returned to the same dealer and sold another of the stolen vehicles. On June 3 appellant and Mrs. Haynes sold another of the stolen · vehicles in San Francisco. On July 3 Mrs. Haynes sold a stolen white Cadillac

convertible to Thrifty Motors in Stockton, California. The latter Cadillac had been stolen from United City Gas Company and its president, Mr. Ralph Sieben. At the time it was stolen, the glove compartment contained two credit cards issued to Ralph Sieben. On July 19, 1963, appellant Santoro, accompanied by codefendants Coduto and LaMagna, visited Thrifty Motors in Stockton and offered two Cadillacs for sale. F.B.I. agents approached Santoro and warned him of his constitutional rights. Appellant was taken to the F.B.I. office in Stockton and asked to identify himself. He produced two credit cards issued to Ralph Sieben and a false Illinois driver's license in the name of Ralph Sieben. He told F.B.I. agents that he was Sieben, but later changed his story to state that a man named "Ralph" had asked him to transport the cars to the West Coast and had given him the cards to facilitate the ·sale.

As noted above, Santoro was convicted. On this appeal he raises four alleged errors: (1) that statements of codefendants were admitted into evidence without limiting instructions; (2) that certain exhibits were admitted into evidence though they were the products of an unlawful search; (3) that he was denied the right to counsel; and (4) that the court below denied him a hearing on his claim of wire tapping by government agents. We will consider each claim in order.

### I. Codefendants' Statements

■ The post-arrest statements of codefendants Haynes, LaMagna and Coduto were introduced at the trial. Appellant made no objection and requested no instruction limiting the jury's consideration of these statements to the individual declarant. Clearly appellant was entitled to such an instruction. Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949). Indeed, it was incumbent upon the court to give such an instruction even though not requested by any of the defendants. Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), Lutwak v. United

States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

Appellant points out that no limiting instruction was given following the introduction of the statements of Haynes and LaMagna. Appellant fails to mention, however, that when the first of the statements of the codefendants, that of Coduto, was put into evidence, the court sua sponte generally instructed the jury that any one defendant's statement binds only that defendant and no other.[1]

■ Appellant's claim of error is, actually, not that the jury was not instructed, but that the instruction was not repeated after each defendant's statement. We note that even after the court had instructed the jury after the Coduto statement, appellant's counsel made no request for a repetition of the instruction after the Haynes and LaMagna statements. We cannot agree with appellant that this failure to repeat the instruction was error. The instruction given by the court after Coduto's statement was, by its terms, applicable to the statements of any defendant. We presume, as we must, that the jury so understood it, and that it properly followed that instruction in considering the guilt of each defendant. The evidence, other than the implication contained in these statements, was ample to sustain the jury's verdict. Cf. Calhoun v. United States, 368 F.2d 59 (9th Cir. 1966). We find no error in failing to give additional limiting instructions. Cf. Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 decided June 12, 1967.

## II. *The Search and Seizure*

Appellant contends that Government Exhibits 7, 8, 9 and 10 were erroneously admitted into evidence. Appellant argues that the items were seized pursuant to an arrest which was unlawful because made without a warrant and without probable cause. No motion to suppress within Rule 41(e), Fed.R.Crim.P. was made prior to trial; and the government contends that appellant's motion to strike was inadequate. The facts of this case, however, make it unnecessary to decide the question of the legality of the arrest.

■ Exhibit 10 is the check for $9200 presented to Santoro in payment for the two stolen cars sold to Thrifty Motors on July 19, 1963. It was payable to Ralph Sieben, but it was never cashed since it was seized by F.B.I. agents when Santoro was arrested just after he received it. As the government points out, no motion to suppress was made. In addition, as to Exhibit 10, no objection was made to its admission into evidence (R.T. p. 493), and appellant's motion to strike was not directed to it (see R.T. p. 546). Any objection appellant might have had to Exhibit 10 was waived by failure to properly raise any objection in the trial court.

Exhibits 7, 8 and 9 are the two credit cards issued to Ralph Sieben and the false Illinois driver's license, issued in the name of Ralph Sieben, respectively. Appellant objected to their admission into evidence (R.T. p. 501) and moved to strike them (R.T. p. 546). Although it is not completely clear, the basis for the objection and motion to strike seems to be that Santoro was not taken before a judicial officer as required by Rule 5(a), Fed.R.Crim.P. We need not consider this alleged failure, if there was any failure, because we are of the opinion that Santoro voluntarily surrendered the challenged exhibits to the F.B.I.

■ Santoro was arrested at the Thrifty Motors lot, and he was warned of his rights at that time. (R.T. p. 492.) At the lot he identified himself as Ralph Sieben. He was taken to the F.B.I. office in Stockton where he was interviewed by Agent Morley. During the interview Santoro, still representing himself to be Sieben, was asked to identify himself. (R.T. p. 500.) At that time he

1. "THE COURT: Now, ladies and gentlemen of the jury, I will on my own motion tell you that any statements made by one of these defendants after this alleged offense occurred is binding upon that defendant and that defendant alone. In other words, it is not binding upon the other defendants." (R.T. p. 448, lines 8–12.) See also R.T. p. 387.

presented to Agent Morley three items of identification, the two credit cards and the false Illinois driver's license. Each bore the name of Ralph Sieben. The items of identification were not seized from Santoro. He had been warned of his rights (R.T. p. 498), but he continued his attempt to deceive Agent Morley. As part of his scheme he offered the three exhibits to establish a false identity, and did so freely and voluntarily. (R.T. p. 501.) In such a case we have no problem of search or seizure, and the exhibits were properly admitted into evidence.

■ Our resolution of this specification of error is not to be construed as a tacit finding that the arrest in this case was not supported by probable cause. The record contains little on the question because of the absence of a pretrial motion to suppress. Without a motion to suppress, there is no reason disclosed by the record for the court below sua sponte to inquire into the validity of the arrest.

### III. *The Right to Counsel*

Santoro's claim of denial of the right to counsel is based on his responses to questions put to him by Agent Morley:

"When I [Agent Morley] asked him as to the source of the cards [sic], how come Mr. Sieben got them, he stated that he would rather—he did not want to answer that for fear of getting Mr. Sieben in trouble. If there was something wrong with the cars, why, he'd rather have his attorney present before he made any statement along that line." (R.T. p. 504, lines 2–7.)

■■ Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), was decided before this case was tried, so the principles announced therein apply to this case. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was decided after this case was tried, and hence its principles do not apply. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 6 L.Ed.2d 882 (1966). Under *Escobedo* Santoro was clearly entitled to consult counsel in connection with making any statements to F.B.I. agents. Yet here Agent Morley was careful to end any line of questioning with respect to which Santoro indicated he wished to consult counsel. Santoro did not indicate that he wanted an attorney before making *any* statement, and his awareness of his right to counsel is apparent from the quoted testimony. Santoro made it clear to Agent Morley he desired and requested counsel before discussing certain matters. Agent Morley respected Santoro's position. On the record as a whole we cannot say that Santoro was denied the aid of counsel.

### IV. *The Alleged Wiretapping*

It appears that after Santoro's arrest in Stockton he called Miss Marino in Chicago with reference to obtaining bail. In the course of the conversation Santoro requested Miss Marino "to water the plants" and "take out some garbage" in his apartment in Chicago. Thereafter F.B.I. agents visited Miss Marino and asked her if the reference to watering plants or taking out the garbage had any special meaning. Santoro was also asked by F.B.I. agents whether these phrases had any special meaning. Both had said this language had no hidden meaning and had so advised the F.B.I. (R.T. pp. 534–536.) Both Santoro and Miss Marino in the affidavits indicated that they had revealed their conversation to no one else.

At the trial, both prior to and following the government's case, motions to suppress were renewed. Since appellant did not point to the specific evidence which he contended had its source in the wiretap, the court denied the motions. This, appellant asserts, is error. He contends that once wiretapping is established (or, as here, incorporated in an offer of proof), the appellant has met his burden, and the burden is then on the government to establish lack of taint in the evidence upon which it relies. As support appellant cites United States v. Coplon, 185 F.2d 629, 636 (2d Cir. 1950), where it was stated:

"The accused has the burden of proving that the prosecution has in fact 'tapped' his wires; but, if he succeeds in doing so, the burden falls upon the

prosecution to prove that the information so gained has not 'led,' directly or indirectly, to the discovery of any of the evidence which it introduces." 185 F.2d at 636.

Accepting arguendo that such is the proper assignment of burden in a proper case, we do not regard it as appropriate here.

 The district court was within its discretion in denying appellant's pre-trial motion to suppress on the basis that he had already received one chance to attack the evidence prior to trial and had chosen to do so on affidavits only. The motion was denied without prejudice to its renewal at the close of the government's case. Thus when appellant finally made his offer of proof of the existence of the wiretap, the government's evidence was in and its nature was apparent to the trial judge.

The evidence upon which the government's case rests appears on its face to have been wholly unrelated to the single alleged post-arrest tap and to have been the product of normal investigation and of surveillance founded on pre-arrest suspicion. It related solely to proof of ownership of certain automobiles, engine number alteration, and sale of the same automobiles by Santoro and his codefendants. Testimony was given by the car owners, expert examiners of engine number changes, purchasers of the cars, and FBI agents who were watching the final sale. The district court was understandably at a loss to see how such evidence could be related to a single tapped phone call made by appellant from the Stockton jail following his arrest.

 At this point the burden was on the defense to show not only the fact of a wiretap to which the government has access, but to show a tap that was conceivably the source of government evidence. Nothing would be gained by having the government proceed through the time-consuming formality of identifying the source of all of its evidence where that evidence has already been presented to the court and its nature is such as to reject the wiretap as its source. In such a case it is appropriate to place the burden on appellant of pointing to evidence which might by some means have been the product of the tap and whose source he wishes disclosed.

We affirm the denial of the motion to suppress under the facts of this case and we find no error justifying a reversal of the conviction. The conviction is affirmed.