UNITED STATES of America,
Plaintiff-Appellee,

v.

Horace W. SIMS, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Ralph Howard FREEMAN, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Vester Lee PRICE, Defendant-Appellant.

Nos. 19798–19800.

United States Court of Appeals,
Sixth Circuit.

Aug. 7, 1970.

Charles F. Newman, Memphis, Tenn., for appellant Sims; Lucius E. Burch, Jr., Burch, Porter & Johnson, Memphis, Tenn., on brief.

Warner Hodges, (Court appointed) Memphis, Tenn., for appellants Freeman and Price.

William A. McTighe, Jr., Asst. U. S. Atty., Memphis, Tenn., for appellee; Thomas F. Turley, Jr., U. S. Atty., Memphis, Tenn., on brief.

Before WEICK, McCREE and BROOKS, Circuit Judges.

BROOKS, Circuit Judge.

The defendant-appellants, Horace W. Sims, Vester Lee Price and Ralph Howard Freeman, appeal from their convictions for conspiracy and bribery of public officials in violation of 18 U.S.C. §§ 371 and 201. The conspiracy charged was to bribe cotton classers who were employed by the United States Department of Agriculture to "downgrade" certain government cotton which the defendant Sims would then purchase at less than its true market value.

Defendant Sims was indicted and convicted for conspiring to bribe and bribing a public official. Defendant Freeman, a cotton classer, and defendant Price, a laborer at the Memphis Cotton Classing Office, were both indicted and convicted for conspiracy and for accepting bribes. In all there were eleven codefendants indicted for their respective parts in the bribery conspiracy. Five defendants plead guilty before trial. Six defendants were tried together and one of them entered a guilty plea during the trial. One defendant was acquitted. The trial lasted for six weeks. Only the three defendants appeal.

As far as criminal schemes go, there was nothing unique about the plan to bribe these government employees. Allegedly defendant Sims, a cotton purchaser, got in touch with several cotton classers and laborers at the Memphis Classing Office and offered them money to downgrade the quality of the cotton in certain numbered lots. Then Sims would purchase the cotton at the reduced price and resell it at a higher price which reflected the true quality of the cotton.

On this appeal defendant Sims raises a single issue. He contends that it was error for the District Court to have allowed the confession of his codefendant Price to be admitted at the trial and that he, Sims, should have been granted either a severance or a new trial because of its use. Price's confession, which he

later repudiated in part, implicated Sims in the conspiracy. Before the trial, certain names mentioned in the confession were deleted, however Sims' name could not be removed without making the statement meaningless. The confession was used by the government against defendant Price after he withdrew his guilty plea and stood trial.

Defendant Sims argues that use of the statement involving him in the conspiracy prejudiced him and violated his rights to a fair trial. He cites Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), to support his proposition. The rule of law set out in *Bruton* has received substantial judicial consideration in its relatively short history. [See the analysis made of the *Bruton* decision in Judge Bailey Brown's Memorandum Opinion in this case appearing at 297 F.Supp. 1009 (1969)]. This Circuit has steered a somewhat inconsistent course on the question of whether the rationale behind *Bruton* would apply in a situation where a codefendant, having made an inculpating statement which also implicates another defendant, later at trial takes the stand and denies the statement. Thus, in Townsend and Terry v. Henderson, 405 F.2d 324 (6th Cir. 1968), and West v. Henderson, 409 F.2d 95 (6th Cir. 1969), under the facts involved in those cases and in reliance on certain language in Douglas v. Alabama, 380 U. S. 415, 420, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L. Ed.2d 284 (1969), this Court applied the *Bruton* rule in a situation where the codefendant who made the incriminating statement took the stand and denied having made it. The Court in those cases thought that if the codefendant merely denied having made the statement, the defendant who was implicated by the statement did not have an effective right to cross-examine, that is, confront the codefendant. In United States v. Cale, 418 F.2d 897 (6th Cir. 1969), it was decided that the *Bruton* rule did not apply when the codefendant takes the stand and denies having made the statement, reasoning that the implicated defendant would, under these circumstances, have an opportunity to cross-examine the codefendant. It appears that several other Circuits are also in disagreement on this question. See e. g., Santoro v. United States, 388 F. 2d 113 (9th Cir. 1967), cert. granted, vacated and remanded, 392 U.S. 301, 88 S.Ct. 2054, 20 L.Ed.2d 1106 (1968), on rehearing, 402 F.2d 920, 922 (1968), holding *Bruton* doesn't apply under these circumstances; but cf. United States v. Bujese, 378 F.2d 719 (2nd Cir. 1967), cert. granted, vacated and remanded, 392 U.S. 297, 88 S.Ct. 2064, 20 L.Ed. 2d 1113 (1968); on rehearing, 405 F.2d 888 (1969), holding *Bruton* applies even under these circumstances, but see United ed States v. Catino, 403 F.2d 491, 496 (1968), also in the Second Circuit which indicates that *Bruton* would not apply. See also, United States v. Guajardo-Melendez, 401 F.2d 35 (7th Cir. 1968), taking a somewhat ambivalent approach to the question.

Our resolution of this narrow issue can be briefly stated. A defendant is not denied his Sixth Amendment right to confrontation when a codefendant's incriminating statement, which implicates the defendant, is used against the codefendant during trial if subsequently the codefendant takes the stand in his own behalf. The right to confrontation would then exist for the defendant regardless of whether the codefendant denies or admits making all or part of the incriminating and implicating statement. This rule presupposes that the trial court gives adequate cautionary instructions on the limited use to be made of the incriminating statement. Accordingly, we choose not to, nor do we believe that the reasoning in *Bruton* can be extended beyond the limited facts of that case. [A recent Supreme Court case lending support to this interpretation is State of California v. Green, 399 U.S. 149, 90 S. Ct. 1930, 26 L.Ed.2d 489, decided June 23, 1970]. Therefore, we conclude that

the District Court did not err in its handling of this matter and that defendant Sims was not denied a fair trial.

◾ Defendant Price raises for our consideration the question whether the inculpating statement he made but later denied was properly admitted against him at the trial. He argues that the statement was not voluntarily made. It appears from the facts surrounding the taking of the statement and the statement itself that it was voluntarily made. The statement contained a "Waiver of Rights" clause and defendant Price admitted having read and signed the statement. See United States v. Morgan, 394 F.2d 973 (6th Cir. 1968). The facts indicated that Price was given the *Miranda* warnings and still agreed to make the statement. The District Court initially found, outside the presence of the jury, that the statement was voluntary and then the jury was properly charged that it could not consider the statement unless it first found it was voluntarily made. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). And our independent examination of the record convinces us that defendant Price voluntarily made the inculpating statement. Davis v. State of North Carolina, 384 U.S. 737, 741–742, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966).

◾ Defendant Freeman raises three alleged errors for consideration. First, he contends that he was not adequately protected from the prejudicial effects of being implicated in the conspiracy by codefendant Price's statement merely by having had his name deleted from the statement. He argues that since there were only two cotton classers who stood trial and Price's statement implicated "cotton classers" the jury could only surmise that he was one of the classers named in the statement. While two classers stood trial, there were four indicted. Several additional classers testified at the trial. We conclude that defendant Freeman's identity was sufficiently masked by deleting his name from Price's statement and he was not prejudiced by its use. See Yates v. United States, 418 F.2d 1228 (6th Cir. 1969).

◾ The second question is whether the testimony of a codefendant which implicated defendant Freeman in other similar cotton bribery schemes was properly admitted into evidence. Defendant Freeman maintains that this evidence did nothing more than blemish his reputation in the eyes of the jury. The government introduced this evidence for the limited purpose of showing a common design and guilty intent on the part of defendant Freeman. Granting that while evidence of other miscellaneous crimes engaged in by a defendant is generally inadmissible at the defendant's trial for a separate and distinct crime, in this case the limited use made of the evidence and the District Court's cautionary instructions to the jury with respect to the allowable use of the evidence indicates that no prejudice resulted to the defendant. Roberson v. United States, 282 F.2d 648 (6th Cir. 1960), cert. denied, 364 U.S. 879, 81 S.Ct. 167, 5 L. Ed.2d 108; Nees v. Culbertson, 406 F. 2d 621 (5th Cir. 1969).

◾ Defendant Freeman also questions the sufficiency of the evidence from which the jury could convict him, specifically challenging the sufficiency of his coconspirator's testimony to convict him. At the trial, two coconspirators of defendant Freeman testified that he agreed to and did in fact accept bribes to downgrade cotton. There was also evidence that the defendant had met with other conspirators on several occasions. Taking the evidence in the light most favorable to the government, United States v. Decker, 304 F.2d 702, 705 (6th Cir. 1962), and examining the evidence admitted against defendant Freeman, we hold there was sufficient evidence to sustain the jury verdict of guilty.

◾ Finally, both defendants Price and Freeman jointly argue that they should have been granted severances. The test of whether a severance should

9

093

be granted is the likelihood of substantial prejudice to the defendant(s) if tried together. Schaffer v. United States, 362 U.S. 511, 516, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960). In addition, the District Court's denial of severance will only be disturbed by the reviewing court if the District Court abused its discretion. See, Fed. R. of Crim. P., Rule 14; United States v. Martinez, 428 F.2d 86 (6th Cir., Decided June, 1970); United States v. Morgan, 394 F.2d 973, 978 (6th Cir. 1968). After reviewing the record on this matter, we find neither prejudice nor an abuse of discretion in the denial of defendants' motions for separate trials.

The judgments are affirmed.