UNITED STATES of America ex rel.
Gary G. RUSH, Petitioner,

v.

Edward C. ZIEGELE, Superintendent,
Leesburg, New Jersey State
Prison, Respondent.

Civ. No. 479-71.

United States District Court,
D. New Jersey.

Oct. 26, 1971.

Gary G. Rush, pro se.

A. Donald Bigley, Prosecutor of Camden County by Jerome Jay Cohen, Asst. Prosecutor, Camden, N. J., for respondent.

## MEMORANDUM AND ORDER

COHEN, District Judge:

Petitioner, Gary G. Rush, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 et seq., challenging the legality of his detention in the New Jersey State Prison at Leesburg, where he is confined to life imprisonment, upon conviction of a felony-murder.

Petitioner's state court remedies on direct appeal have been exhausted, State v. Ordog and Rush, 45 N.J. 347, 212 A.2d 370 (1965), cert. den. 384 U.S. 1022, 86 S.Ct. 1942, 16 L.Ed.2d 1025 (1966).

For the most part, the grounds urged here by the petitioner are substantially those raised in the New Jersey Supreme Court and there found to be without merit:

1. Petitioner's self-inculpatory statements are unbelievable, involuntary and inadmissible in evidence as a matter of law;

2. His admissions to psychiatrists are subject to the same tests for admissibility as any other inculpatory statement and, hence, they also were not admissible;

3. A severance should have been granted since the introduction in evidence of his codefendant's extrajudicial statement deprived him of a fair trial;

4. The prosecutor's various remarks were inflammatory and not cured by the trial judge's instructions to the jury; and

5. That there was no reliable evidence of petitioner's guilt.

While the severance issue and that of his admissions to psychiatrists were not directly asserted on appeal, the New Jersey Supreme Court very carefully reviewed the record and found no clear error on any grounds and affirmed his conviction. *Certiorari* having been denied by the United States Supreme Court, it would appear futile for peti-

tioner to pursue post-conviction relief. Under these circumstances, petitioner has sufficiently exhausted his state remedies. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); United States ex rel. Boyance v. Myers, 372 F. 2d 111 (3 Cir. 1967). In re Thompson's Petition, 301 F.2d 659 (3 Cir. 1962); and In re Ernst's Pet., 294 F.2d 556 (3 Cir. 1961).

Careful and independent examination of the State Court record, as required by Townsend v. Sain, 372 U.S. 293, 316, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), has been made here, as was also done on a prior occasion with respect to the petition for a writ of habeas corpus by petitioner's codefendant, Anthony F. Ordog, Jr. See this court's opinion reported in United States ex rel. Ordog v. Yeager, 299 F.Supp. 321 (D.N.J.1969). As set forth therein, petitioner Rush, his codefendants, Ordog and Russell Rush, his brother, were indicted for the crime of felony-murder. Initially, all three pleaded not guilty. Thereafter, each changed his plea to *non vult*. Subsequently, petitioner and Ordog retracted their pleas and reentered pleas of not guilty; Russell Rush's plea of *non vult* remained and he was sentenced to life imprisonment.

At trial, the State contended that, on January 18, 1962, during the perpetration of an armed robbery of a tavern in Camden County, Russell Rush, armed with a shotgun, and petitioner, armed with a claw hammer, terrorized the patrons of the tavern in the course of the robbery; relieved a customer and one of the proprietors of their wallets; emptied the cash register of its contents; and, when Mary Tilton, co-owner of the tavern, who was behind the bar at the time, denied having any more money, she was shot at close range and killed by Russell Rush. Ordog was alleged to have been the driver of the "getaway" car waiting outside of the tavern. The State did not seek the death penalty and upon conviction both petitioner and Ordog were sentenced to life imprisonment.

The severance question and the challenged psychiatric testimony were raised by Ordog in his petition, and, for the reasons stated in this Court's opinion, supra, led to a different result from that reached here on Rush's petition.

■■ We must be ever mindful that a habeas corpus proceeding in the federal courts is a civil action contesting the legality of the restraint of a petitioner's personal liberty. Guilt or innocence is not to be redetermined, nor is the proceeding an additional avenue of appeal. Federal courts have no authority to retry state criminal cases. It is only when circumstances are presented which demonstrate fundamental unfairness in a trial, or the infringement of important constitutional rights, that questions of federal dimension arise warranting intrusion into the province of a state's criminal courts. See: Snyder v. Peyton, 303 F.Supp. 325 (W.D.Va.1969); United States ex rel. Smith v. Baldi, 96 F.Supp. 100, 103 (E.D.Pa.1951). Furthermore, as observed in *Townsend*, federal courts must carefully scrutinize the state court record in order to ascertain whether the factual determinations of the state court were fairly supported by the record. And although a federal court may, but need not, defer to the state court's findings of fact, it cannot do so as to its conclusions of law. Brown v. Allen, supra.

■ Turning then to the instant petition gauged against the state court records and opinions, with respect to points 3 to 5 inclusive, this Court is in complete accord with the determination of the New Jersey Supreme Court on those same issues that no reversible error was involved and that the petitioner did in fact have a fair trial. See: State v. Ordog and Rush, supra, 45 N.J. at pp. 366–371, 212 A.2d at p. 370. With regard to petitioner's challenged confessions, the trial court endeavored to determine the issue of voluntariness out of the presence of the jury, to which procedure the petitioner objected, insisting upon his right to recite the facts surrounding such confessions only to the jury. However, during that hearing, pe-

titioner did introduce testimony on his own behalf by medical experts (Drs. Rushton and Kosofsky) to show that even under the state's version of the circumstances surrounding the taking of his confessions, his mental and emotional state demonstrated that such were in effect coerced. It should be noted that there were three separate alleged confessions by this petitioner which, both at the trial and the appellate level, were found to be voluntary and therefore trustworthy as evidence; one was petitioner's own handwriting; another was typewritten; and the third was orally made by him to two psychiatrists (Drs. Yaskin and Spradley), who examined the petitioner and who testified on behalf of the State. The latter admission of guilt of the crime charged was properly introduced and admitted in evidence at trial, in rebuttal to petitioner's attack upon the voluntariness of his other confessions by reason of his asserted defense of insanity.

In this instance, unlike *Ordog*,[1] the expert rebuttal testimony was with respect to the petitioner as a declarant against himself and not as a co-conspirator making a statement to a psychiatrist inculpating another. In *Ordog*, the thrust of his petition was that the admission in evidence of Rush's extrajudicial confessions and declarations to Dr. Spradley inculpating Ordog was improper; that this testimony, if admissible at all, should have been confined to the issue of Rush's sanity at the time of the crime and as to his ability to stand trial; and that either Ordog's name should have been deleted from the Doctor's testimony or a severance granted.

This Court quite agreed for the reasons stated in its opinion.

However, we do not have the same prejudicial infection regarding the present petitioner. As pointed out by the New Jersey Supreme Court (45 N.J. 347 at p. 356, 212 A.2d at p. 374): "Additionally, the confessions of Anthony [Ordog] and Gary [Rush] were substantially the same. Since Gary's confession was to all intents cumulative of Anthony's, the identical information was before the jury in *each* confession, and it was unlikely that the jury would have any occasion to go beyond Anthony's *own confession and use similar statements in Gary's confession against him*." (Citing inter alia United States ex rel. Johnson v. Yeager, 327 F.2d 311, 318–319 (3 Cir. 1963), cert. den. 377 U. S. 984, 84 S.Ct. 1890, 12 L.Ed.2d 751 (1964)). (Brackets and emphasis supplied.)

Turning to the remaining issue, that of severance, the quoted language immediately above led the New Jersey Supreme Court to conclude that the denial of Ordog's motion for severance, not joined in by petitioner Rush, was not an abuse of the sound discretion of the trial judge. We disagreed. The holding of this Court in the *Ordog* petition presents quite a different matter from that here. Moreover, since our opinion in *Ordog*, which relied principally on Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968), various distinctions have been engrafted upon *Bruton*.[2] Most of the recent decisions restrict the *Bruton* principle to

1. See United States ex rel. Ordog v. Yeager, 299 F.Supp. 321 (D.C.N.J.1969), in which this Court granted a writ of habeas corpus coupled with a condition that Ordog stand retrial. Rush's statements inculpating Ordog, testified to by a state medical expert, was held to be a denial of a fair trial, particularly in light of a denial of a motion strenuously advanced for a severance by Ordog. It should be observed, however, that Rush did not join in Ordog's motion for severance. Inter-

estingly enough, after a 13 day retrial, Ordog was acquitted on March 2, 1970.

2. See cases collected in marginal note 16, United States ex rel. Ordog v. Yeager, 299 F.Supp. 321 at p. 330. And see the analysis of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 contained in United States v. Sims, 297 F.Supp. 1009 (W.D.Tenn.1969). Cf.: United States ex rel. Nelson v. Follette, 430 F.2d 1055 (2 Cir. 1970); United

circumstances where opportunity for cross-examination of a *codefendant declarant* is lacking.[3] It appears, however, that there is even some disagreement where the codefendant declarant takes the stand and merely denies the voluntariness of his statement which inculpates his codefendant. See United States v. Sims, 430 F.2d 1089, 1091 (6 Cir. 1970). In *Sims*, the following pertinent language appears at pages 1091–1092:

> Our resolution of this narrow issue can be briefly stated. A defendant is not denied his Sixth Amendment right to confrontation when a codefendant's incriminating statement, which implicates the defendant, is used against the codefendant during trial *if subsequently the codefendant takes the stand in his own behalf.* The right to confrontation would then exist for the defendant regardless of whether the codefendant denies or admits making all or part of the incriminating and implicating statement. This rule presupposes that the trial court gives adequate cautionary instructions on the limited use to be made of the incriminating statement. Accordingly, we choose not to, nor do we believe that the reasoning in Bruton can be extended beyond the limited facts of that case. [Citing Calif. v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed. 2d 489 (1970)]. Therefore, we conclude that the District Court did not err in its handling of this matter and that defendant Sims was not denied a fair trial. (Emphasis supplied.)

The condition-subsequent emphasized above in *Sims* seems to weaken its conclusion as a principle of general application because the codefendant-declarant can constitutionally elect not to testify, in which event the inculpation of the defendant cannot be cured under the *Bruton* principle, which requires confrontation and opportunity for cross-examination.

█ Petitioner's primary attack, in this case, goes to his own incriminating declarations and not to any extrajudicial statements allegedly made by his codefendant, Ordog, inculpating him. Moreover, petitioner did testify in his own defense. He can hardly complain, on the basis of the *Bruton* principle, about self-incriminating statements, the voluntariness of which he denies but which were found to have been voluntarily made.

In Calif. v. Green, 399 U.S. 149, at p. 158, 90 S.Ct. 1930, at p. 1935, 26 L.Ed.2d 489 (1970), cited in *Sims*, supra, the following is stated:

> Viewed historically, then, there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination.

Turning, lastly, to the petitioner's challenged use of inculpatory statements allegedly made to state medical experts, principally to Dr. Spradley, as being subject to the same tests for voluntariness and admissibility as other admissions against interest, this issue is brought into sharp focus in State v. Whitlow, 45 N.J. 3, 210 A.2d 763 (1965). Justice Francis, speaking for the New

---

States v. Lipowitz, 407 F.2d 597 (3 Cir. 1969), cert. den. Smith v. United States, 395 U.S. 946, 89 S.Ct. 202, 23 L.Ed.2d 466 (1969). In Lipowitz, Judge Biggs pointed out that an FBI agent's testimony regarding the alleged confession of defendant-Lipowitz's own involvement in a bank robbery contained strong references to confederates, but did not name codefendant Smith as one of them; this was held not violative of Bruton. Had he been named, said Judge Biggs, Bruton might well have been applicable unless confrontation was assured.

3. The New Jersey Supreme Court did not have the benefit of Bruton and Roberts at the time it decided this case.

Jersey Supreme Court at page 16, 210 A.2d at page 770, stated:

> The difficult question is whether inculpatory statements or confessions of the accused respecting the crime charged, made during the psychiatric interview and examination may be introduced in evidence. Where it appears at the trial that the conversations with the doctors were necessary to enable them to form an opinion either as to mental capacity to stand trial (where it is in issue) or to commit the crime, [both of which petitioner Rush placed into issue before trial] such statements or confessions are admissible. Their function or probative force, however, is limited to the sanity issue and may not be used as substantive evidence of guilt. [Citing authorities, one of which is 18 U.S.C.A. § 4244.] (Parenthesis in opinion, brackets supplied.)

Petitioner's later attempt at trial to again place his sanity at the time of the commission of the crime in issue, opened the door to the psychiatric testimony containing his self-inculpatory admissions. No unfair advantage was taken of him in this regard. Dr. Spradley (as well as Dr. Yaskin) was available and testified, subjecting himself to the fullest of cross-examination. The testimony being confined to the issue of sanity or capacity of the declarant, it did not unfairly infect the trial of his guilt or innocence of the crime charged as it did his codefendant Ordog.

In conclusion, it is the opinion of this Court that petitioner was afforded a fair trial in all respects; that there was no error of constitutional dimension; and that under all the evidence the jury's verdict of guilty was clearly supported by the evidence.

Accordingly, the petition for a writ of habeas corpus will be denied.