577 F.2d 362
 UNITED STATES of America, Plaintiff-Appellee,
v.
John YOPP, Defendant-Appellant.
 No. 77-5258.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 8, 1977.
Decided May 31, 1978.
 
 Arthur J. Tarnow, Detroit, Mich., for defendant-appellant.
 James K. Robinson, U. S. Atty., Peter J. Kelley, Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee.
 Before EDWARDS and ENGEL, Circuit Judges, and NEESE,* District Judge.
 EDWARDS, Circuit Judge.
 
 
 1
 Two defendants, Feodies Shipp, Jr., and John Yopp, were convicted for making false statements in real estate documents submitted to the Department of Housing and Urban Development, in violation of 18 U.S.C. §§ 1010 and 2(b) (1976).[1] Shipp was indicted on all 16 counts of the indictment and the jury found him guilty on six counts. Yopp was indicted on five of the 16 counts and the jury found him guilty on only two counts. Shipp was sentenced to two years and fined $2,500; Yopp was given two years and fined $1,000.
 
 
 2
 The proofs in relation to Shipp's guilt were specific, definitive, and wholly supportive of the jury verdict. This court was able to perceive no meritorious appellate issue. Shipp's conviction was affirmed on order on December 29, 1977.
 
 
 3
 The situation is somewhat different in relation to appellant Yopp, whose appeal is before us now.
 
 
 4
 The District Judge's opinion denying appellants' motion for acquittal set out the government's theory and proofs as follows:
 
 
 5
 The Government's theory was that Yopp and Shipp, as the owners of Walden Property, Inc., knowingly and wilfully falsified or forged various documents which influenced the decisions of the Department of Housing and Urban Development (hereinafter HUD) in its approval of applications for mortgage guarantees on the houses which Walden Properties sold.
 
 
 6
 HUD regulates the rate of profit of developers who participate in its mortgage insurance programs. In any given case HUD will only insure a mortgage up to a certain amount which is determined by combining the cost of the home with the cost of certain repairs or improvements. By falsely inflating either the price they had paid for a house or the cost of repairs performed on it defendants were able to gain HUD approval for higher mortgage amounts. Accordingly, they were able to sell homes which they had purchased at prices which would not otherwise have qualified them for HUD assistance.
 
 
 7
 HUD also is concerned that it insures mortgage loans for only such persons as will in all likelihood be financially able to make payments required by the mortgage contract. Accordingly, HUD requires various documents setting forth a prospective purchaser's financial status. The defendants, by falsifying certain parts of these documents, were able to secure HUD-insured financing for homes they sold to persons who might not have otherwise qualified for mortgage insurance.
 
 
 8
 It is the Government's theory that the defendants consistently ran their business in this manner falsifying various documents to get HUD approval of higher amounts and ineligible purchasers. The Government contends that the degree of concert of actions shown between the two defendants makes the actions of one defendant in the furtherance of this scheme admissible against the other.
 
 
 9
 Shipp was the member of the firm who actually conducted most of the illegal aspects of their business. His signature, and not that of Yopp, is found on those documents which required a signature from Walden Properties. Direct testimony showed him to be the one who told several purchasers not to "worry" about falsified deposit and purchase amounts, etc., but not Yopp.
 
 
 10
 The issue which concerns this court in the Yopp conviction arises from the fact that the jury convicted him only on Counts 15 and 16 of an 18-count indictment, but the District Judge, apparently because the testimony bore on the question of a common plan between Shipp and Yopp, admitted evidence of Yopp's participation in other transactions involving false statements in which Shipp had been indicted but Yopp had not. Additionally, it does not appear that the jury was ever specifically told it could only take this testimony into account in determining the existence of a common plan or intent and not to prove that Yopp acted on it in relation to the counts upon which he was charged. Absent such a charge, appellant argues that the jury may have found him guilty because there was evidence that he was present and participated in other transactions than the ones on which he was actually indicted, in violation of fundamental principles of due process. Appellant cites United States v. Ring, 513 F.2d 1001 (6th Cir. 1975), where this court said:
 
 
 11
 As a general rule, in jury trials, evidence of a criminal defendant's prior misconduct is inadmissible in the prosecution's case in chief to show the accused's bad character or criminal propensity. The reason is "not because it has no appreciable value but because it has too much." 1 J. Wigmore, Evidence § 194 (3d ed. 1940). It tends to confuse the issue of guilt or innocence of the specific offenses charged and to weigh too heavily with the jury. Mr. Justice Jackson in Michelson v. United States, 335 U.S. 469, 475-76, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948), stated the general rule and its rationale:
 
 
 12
 The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice. (Footnotes omitted.)
 
 
 13
 See also People v. Zackowitz, 254 N.Y. 192, 172 N.E. 466 (1939) (Cardozo, J.).Exceptions to this rule, however, let in evidence of a defendant's prior misconduct to show motive, intent, absence of mistake or inadvertence, identity of the offender or a common plan, pattern or scheme. United States v. Nemeth, 430 F.2d 704 (6th Cir. 1970); United States v. Wells, 431 F.2d 432 (6th Cir. 1970); United States v. Birns, 395 F.2d 943 (6th Cir. 1968); United States v. Neal, 344 F.2d 254 (6th Cir. 1965). See also People v. Molineux, 168 N.Y. 264, 61 N.E. 286 (1901) (a leading American decision discussing the exceptions). See generally 2 J. Wigmore, Evidence §§ 300 et seq. (3d ed. 1940); McCormick, Evidence § 157 (1954); Stone, The Rule of Exclusion of Similar Fact Evidence: America, 51 Harv.L.Rev. 988 (1938). The exceptions, when properly applied, are justified by a legitimate need for the evidence that outweighs the perils of undue prejudice to the accused. In reaching this accommodation, the law naturally seeks to shield the accused from unnecessary prejudice. Accordingly, the admission of evidence of a defendant's prior acts of bad conduct, under the specified exceptions, requires limiting instructions cautioning the jury not to consider the evidence for improper purposes. United States v. Nemeth, supra; United States v. Sims, 430 F.2d 1089, 1092 (6th Cir. 1970).
 
 
 14
 United States v. Ring, supra at 1004 (footnote omitted).
 
 
 15
 As noted earlier, while Shipp was indicted on all 16 counts of this indictment, appellant Yopp was indicted on only five. They were 1, 6 and 7, and 15 and 16. The jury was unable to agree on Yopp's guilt as to the first three counts named above and he was convicted only upon the 15th and 16th counts pertaining to the sale of a house at 3772 Elmhurst in Detroit to a Mr. and Mrs. Siler. After the jury verdict, on the government's motion, the charges against Yopp were dismissed as to Counts 1, 6 and 7.
 
 
 16
 The most that the proofs show about Yopp's participation in the sale of the Elmhurst house is that he showed it to Mrs. Siler and discussed repairs with her. Shipp closed the deal and handled and signed the two documents which contained fraudulent representations about the amount of the down payment.
 
 
 17
 The Silers testified that they paid no more than $400 to $500, whereas the down payment recited on the purchase agreement and application for mortgage approval was $800. Shipp told salesman Neal and the Silers that he could "take care" of the deficiency.
 
 
 18
 Clearly, the government failed to present any direct proofs from which Yopp could have been found guilty of fraud on the government in relation to the Elmhurst house.
 
 
 19
 The indictment did not charge conspiracy to violate § 1010 against either Shipp or Yopp. It did, however, charge that Yopp aided and abetted Shipp in the fraudulent representations involved in Counts 15 and 16. And the government's basic argument on this appeal is that there were proofs presented primarily in relation to other counts (on which Yopp was either not indicted or not convicted) from which the jury could have inferred that Yopp did aid and abet in the fraud.
 
 
 20
 Appellant contends that these proofs were inadmissible attempts to prove guilt of a crime charged by proving other crimes and that admission of this evidence was reversible error. Appellant also claims that if such evidence is admitted, it can only be admitted as proof of plan or intent, and if so admitted, that appellant was entitled to a limiting instruction to the jury which was requested, was promised and was not delivered.
 
 
 21
 In this regard appellant relies upon Rule 404(b) of the Federal Rules of Evidence and prior case law of this court, including United States v. Ring, 513 F.2d 1001 (6th Cir. 1975), and Dawson v. Cowan, 531 F.2d 1374 (6th Cir. 1976).
 
 
 22
 Section 404(b), entitled Other crimes, wrongs or acts, provides:
 
 
 23
 (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 24
 In United States v. Ring, supra, this court discussed the general evidentiary principles here involved, but Ring was decided before the effective date of the Federal Rules of Evidence and was not a case dealing with "clear error."
 
 
 25
 In Dawson v. Cowan, supra, we held that failure of the judge to give a cautionary instruction to the jury as to the limited use of a prior felony conviction constituted clear error. See also United States v. McFadyen-Snider, 552 F.2d 1178, 1184 (6th Cir. 1977), cert. denied, --- U.S. ----, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978); United States v. Ailstock, 546 F.2d 1285 (6th Cir. 1976); United States v. Ortiz, 507 F.2d 1224, 1226 (6th Cir. 1974); Evans v. Cowan, 506 F.2d 1248 (6th Cir. 1974).
 
 
 26
 In our instant case, when evidence was sought by the government concerning appellant Yopp's role as a partner of Walden Properties in connection with some of the counts where Shipp alone was indicted, Yopp's attorney objected to admission of such evidence pertaining to his client. He sought and was promised an admonition to the jury, presumably in the course of the judicial charge.
 
 
 27
 No such admonition was given then or later in the trial. The charge was explicit in defining the counts of the indictment and which counts and what evidence applied directly to each defendant. It did not, however, tell the jury that the evidence objected to by Yopp's counsel could only be considered as to Yopp's intent, or as to the existence of a plan which the jury might find common to a number of house sales, and not as substantive proof of Yopp's participation in the fraudulent representations made by Shipp in the Elmhurst sale.
 
 
 28
 At the conclusion of the judge's charge, appellant's counsel said he did not think the District Judge had included the promised admonition. To this the District Judge responded that he thought he had. Yopp's counsel then expressed satisfaction with the charge. The record demonstrates that the District Judge had not in fact given the admonition.
 
 
 29
 On this record we think that the government's proffer of proof of a scheme common to a number of similar transactions where Yopp was not indicted was admissible. But for it to be used to support appellant Yopp's conviction, such testimony clearly should have been accompanied by a judicial admonition to the jury that it could only be used as to Counts 15 and 16 to show Yopp's intent or participation in a common plan concerning the sale of the Elmhurst house.
 
 
 30
 What we deal with here is a simple mistake. Yet it may have affected the outcome of the otherwise fair trial. Under the facts of this case, the admonition sought, promised but not delivered, was essential to a fair trial. Its absence was clear error which requires vacation of this judgment and remand for a new trial.
 
 
 
 *
 Honorable C. G. Neese, United States District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 18 U.S.C. § 1010 (1976) provides:
 § 1010. Department of Housing and Urban Development and Federal Housing Administration transactions
 Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Department of Housing and Urban Development for insurance, or for the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by such Department, or the acceptance, release, or substitution of any security on such a loan, advance of credit, or for the purpose of influencing in any way the action of such Department, makes, passes, utters, or publishes any statement, knowing the same to be false, or alters, forges, or counterfeits any instrument, paper, or document, or utters, publishes, or passes as true any instrument, paper, or document, knowing it to have been altered, forged, or counterfeited, or willfully overvalues any security, asset, or income, shall be fined not more than $5,000 or imprisoned not more than two years, or both.
 18 U.S.C. § 2 (1976) provides:
 § 2. Principals
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.