**UNITED STATES of America,**
**Plaintiff,**

v.

**Ben G. MILTON d/b/a Service Check**
**Company, Defendant.**

**No. 36981.**

United States District Court
N. D. Ohio, E. D.

Feb. 23, 1966.

---

Merle McCurdy, U. S. Atty., Bernard Stuplinski, Asst. U. S. Atty., Cleveland, Ohio, for plaintiff.

Adrian B. Fink, Jr., Cleveland, Ohio, for defendant.

KALBFLEISCH, District Judge.

This case came on for trial upon the pleadings. The case was submitted upon a stipulation of facts prepared and filed by the parties, and the Court adopts said stipulation as its findings of fact, as follows:

(1) The defendant, Ben G. Milton d/b/a Service Check Company, is an individual licensed to do business by the State of Ohio pursuant to Chapter 1310 of the Revised Code of Ohio, including the right to the issuance and sale of money orders to the public, with its principal place of business at 989 East Market Street, Akron, Summit County, Ohio.

(2) In such capacity, the defendant in Summit County sold money orders to one Alex S. Birns, true copies of which are attached to the complaint filed herein. Said money orders at the time sold to Mr. Birns were blank as to the name of any payee and the purchaser, Mr. Birns, was authorized by the defendant to fill in the name of such payee as he should designate on each.

(3) On May 24, 1961, the said Alex S. Birns, the purchaser of the money orders from the defendant, was taken into custody by the Police Department of Cleveland, Ohio, in Cuyahoga County, and the said money orders in the face amount of Seven Thousand Three Hundred Dollars ($7,300.00), which were blank as to any payee, which were in his possession, were taken from him by members of the Cleveland Police Department and held by them in accordance with the practice of the Cleveland Police Department regarding property of persons held in custody.

(4) Approximately three (3) years prior to this date of May 24, 1961, a judgment had been entered against one Alex S. Birns, the same Birns who had purchased the said money orders from the defendant, in favor of the United States of America by the United States District Court, Northern District of Ohio, Eastern Division, Civil Case No. 34454, on August 6, 1958, for One Hundred Forty-Six Thousand Ninety-Nine and 39/100 Dollars ($146,099.39). Said judgment was not fully paid on May 24, 1961, and is still unpaid.

(5) On the said May 24, 1961, the United States Attorney filed a Praecipe for a Writ of Execution with the Clerk of the United States District Court to attach the property of the said Alex S. Birns, which was being held by the Police Department.

(6) On the same May 24, 1961, a Deputy United States Marshal proceeded to the Cleveland Police Department and served the Chief of Police with a copy of the Writ of Execution, and pursuant thereto the Chief of Police delivered the said money orders in the face amount of Seven Thousand Three Hundred Dollars ($7,300.00), which were blank as to the payee, to the Deputy United States Marshal in the presence of Alex S. Birns but without his consent. A return was made on the Writ of Execution by the Deputy United States Marshal and the money orders were delivered to the plaintiff, the United States of America.

(7) On the same day, May 24, 1961, Alex S. Birns was released from custody without charges placed against him, and he immediately issued stop-payment or-

ders as to the said money orders to the defendant and to the drawee bank, First National Bank of Akron, in Summit County, Ohio.

(8) On May 26, 1961, two days later, no money orders having been presented for payment to the defendant or the drawee bank, the defendant, in his office at 989 East Market Street, Akron, Ohio, returned to Alex S. Birns the sum of Seven Thousand Three Hundred Dollars ($7,300.00), being the face sum paid by Birns for the same.

(9) The Internal Revenue Service subsequently entered its own name on the money orders as payee.

(10) On June 5, 1961, approximately ten days later, the United States of America presented said money orders to the drawee bank, First National Bank of Akron, Summit County, Ohio, where payment was refused and the plaintiff notified of the May 26, 1961 stop-payment order thereon, and the said money orders were dishonored.

(11) Demand was then made by the plaintiff upon the defendant and the defendant refused and still refuses to honor said instruments.

(12) During all times pertinent herein, a tax lien existed in favor of the United States of America, the plaintiff, for an amount in excess of Seven Thousand Three Hundred Dollars ($7,300.00) against all property of the said Alex S. Birns, said lien being duly filed with the Recorder of Cuyahoga County, Ohio.

(13) No Lien was ever on file in Summit County, Ohio.

(14) The plaintiff, United States of America, now seeks to recover the value of said money orders from the defendant, Ben G. Milton d/b/a Service Check Company, of 989 East Market Street, Akron, Summit County, Ohio.

(15) On the 26th day of May, 1961, Alex S. Birns was a resident of Cuyahoga County and domiciled in the said County in the State of Ohio.

## CONCLUSIONS OF LAW

The money orders involved herein were instruments issued under the authority of Section 1310.01 of the Ohio Revised Code. Each of these money orders was issued by the defendant and directed to the First National Bank of Akron, Ohio, and each money order evidenced the fact that a payee (unnamed) may demand and receive, upon endorsement and presentation to the bank, the amount stated on the face of the money order. State ex rel. Babcock v. Perkins, 165 Ohio St. 185, 187, 134 N.E.2d 839.

Preliminarily, it is necessary to emphasize that the money orders are "property" or "rights to property" within the meaning of Title 26 U.S.C.A., Section 6321.

Incident to Mr. Birns's being taken into custody by the Cleveland Police the money orders were found to be in his possession. The United States Marshal seized the money orders under an execution in Civil Case No. 34454 in this Court. Taking judicial notice of Civil Case No. 34454, the record reveals that the judgment arose from an assessment against Mr. Birns for failure to pay income taxes and that in addition to the aforementioned judgment a lien for the unpaid income taxes, which were the basis of said case, was in existence in favor of the plaintiff for an amount in excess of the face amount of the money orders, said lien having been duly filed with the Recorder of Cuyahoga County.

On November 8, 1963, Judge Green of this Court wrote a searching and thorough memorandum concerning the application and effect of the judgment in Civil Case No. 34454, United States v. Birns, 223 F.Supp. 94 and also the lien of the plaintiff under Title 26 U.S.C.A., Sections 6321 and 6331. Although his memorandum dealt with the seizure of an automobile, which because of its nature lent itself to public sale in the market place, his analysis of the scope and reach of the liens is equally applicable to the defendant's obligation to pay the money orders.

The United States Marshal, having properly and legally seized the money orders, was not only authorized but required under the law to deliver them to the plaintiff upon demand. Simpson v. Thomas, 4 Cir., 271 F.2d 450. It is significant to note that *Simpson,* supra, not only authorized the Marshal to deliver the money orders to the plaintiff but also held, at page 452:

"When a tax lien attaches to property, the United States becomes in a sense a co-owner with the taxpayer of the property to the extent of the lien. The taxpayer then ceases to have an unconditional right to obtain or retain possession of the property. The substantive rights of the United States and of the taxpayer are in no sense dependent upon the nature of the immediate custody of the property or the identity of the custodian."

See also Section 6321, Title 26 U.S.C.A.; and United States v. City of Greenville, 4 Cir., 118 F.2d 963. In *Greenville,* at page 965, the Court stated:

"After the lien provided by the statute attaches, the property has in a sense two owners, the taxpayer and, to the extent of the lien, the United States. Com'r. [of Internal Revenue] v. Coward, 3 Cir., 110 F.2d 725, 727."

See also Welsh v. United States, 95 U.S. App.D.C. 93, 220 F.2d 200.

The existence of the tax lien signifies that notice and demand had been made upon Birns and that he refused to pay the lien, and the levying of the execution and the seizure of the money orders in the presence of Birns and without his consent, as was stipulated, are tantamount to a levy and distraint as provided in Section 6331, Title 26 U.S.C.A.

The seizure of the money orders by the United States Marshal under the writ of execution and, thereafter, the levying of the United States upon said money orders in the custody of the Marshal fall squarely within the holding of United States v. Sullivan, 3 Cir., 333 F.2d 100, at page 116, wherein the Court stated:

"Levy is a summary, non-judicial process, a method of self-help author-

ized by statute which provides the Commissioner with a prompt and convenient method for satisfying delinquent tax claims. See Bull v. United States, 295 U.S. 247, 259–260, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). See also New Hampshire Fire Ins. Co. v. Scanlon, 362 U.S. 404, 407–408, 80 S.Ct. 243, 4 L.Ed.2d 826 (1960). Statutory levy is substantially broader in scope than anything known to the common law, and it is applicable to intangible as well as to tangible property. See Glass City Bank of Jeanette, Pa. v. United States, supra [326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56]. When validly invoked, it effects a seizure of the delinquent's property tantamount to a transferal of ownership. See United States v. Eiland, 223 F.2d 118, 121 (4 Cir. 1955)."

The defendant herein deliberately and knowingly omitted and left blank the name of a payee on the money orders, and deliberately and knowingly sold and delivered such money orders to the taxpayer unconditionally, that is, without any limitation as to a particular purpose or as to any condition precedent to presentment and payment to a bona fide holder in possession.

"It was a well-settled rule of the law merchant that if a person affixed his signature to a negotiable instrument in which there were blanks or omissions, and delivered it to another, the holder thereof had the implied authority to fill the blanks or omissions appearing on the face of the instrument. The Negotiable Instruments Act affirms this rule, declaring that when the instrument is wanting in any material particular, the person in possession thereof has a prima facie authority to complete it by filling up the blanks therein; that a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima facie authority to fill it up as such for any amount. If the blanks are in form to imply authority to fill them, the act

of so doing is not fraudulent, or against the maker's consent, but by his authority." 40 O.Jur.2d, Section 161, pp. 129–130.

The plaintiff having acquired possession and virtual ownership of the money orders, in the manner herein described, under the law of the case became a bona fide holder in possession to whom the defendant was obliged to pay the face amount of the money orders upon surrender and presentment. The law of Ohio on this subject is found in the case of Cross v. The Exchange Bank Co., 110 Ohio App. 219, 168 N.E.2d 910. At page 221, at page 912 of 168 N.E.2d the Court stated:

"In the purchase from a bank of a money order or a cashier's check, payable on its face to one other than the purchaser, the bank is the drawer, and the person named therein as the recipient of the amount specified to be transferred is the payee or drawee. When the purchaser has paid to the bank the consideration specified by it for the execution of the negotiable instrument, and the bank has prepared and delivered to the purchaser the instrument, for delivery to the payee, the contract between the bank and the purchaser of the instrument becomes executed.

"The bank, as drawer, then becomes liable to the payee, drawee or endorsee, for the amount specified in the instrument, upon endorsement, presentation and demand by the payee or endorsee; and the payee or endorsee may demand and receive the amount stated on the face of the instrument, upon endorsement, presentation to and demand upon the bank.

"Under the circumstances set forth in the amended petition, the purchaser had no right to countermand payment by the bank, to the payee or endorsee, in the absence of fraud, failure of consideration, or injunction order prohibiting payment—none of which are here alleged. 9 C.J.S. Banks and Banking § 173, supra."

Money orders and cashier's checks being equivalent (*State ex rel. Babcock,* supra), and it having been well settled in law that there is no right to stop payment on a cashier's check, the same rule applies to money orders (107 A.L.R., page 1464).

The incident of the stop-payment order communicated by Birns to the defendant and the First National Bank of Akron was invalid and does not relieve the defendant of the obligation to pay the money orders. The money orders involved herein were simply directed to the First National Bank of Akron and were to be paid from the bank's funds; however, the liability for payment rests solely upon the defendant. See *State ex rel. Babcock,* supra.

Judgment will be entered in favor of the plaintiff and against the defendant in the sum of Seventy-Three Hundred Dollars ($7,300.00) with interest at six per cent (6%) from June 5, 1961 (Ohio Revised Code, Section 1303.21).