**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Alex Shondor BIRNS, Defendant-Appellant.**

**No. 17790.**

United States Court of Appeals Sixth Circuit.

May 9, 1968.

---

James R. Willis, Cleveland, Ohio, for appellant.

Robert J. Rotatori, Cleveland, Ohio, Merle M. McCurdy, U. S. Atty., Bernard J. Stuplinski, Asst. U. S. Atty., Cleveland, Ohio, on brief, for appellee.

Before EDWARDS, PECK, and Mc-CREE, Circuit Judges.

McCREE, Circuit Judge.

This is an appeal from a conviction under an indictment charging, in three counts, violations of 26 U.S.C. § 7206 (1).[1]

Appellant had been convicted many years previously for income tax fraud and had been sentenced for three years which he served in prison without parole. As an incident of this conviction, the Government had obtained a substantial civil judgment against him for his tax liability. The instant prosecution resulted from his subsequent offer to compromise this liability. Two counts of the

---

1. Any person who—
    (1) Declaration under penalties or perjury.—Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; * * * shall be guilty of a felony. * * *

indictment were based upon statements that he had no assets when in fact it was alleged that he owned a 1958 Cadillac automobile. The third count was based upon a statement that his assets consisted of only $850 in currency when in fact it was charged he owned a 1960 Cadillac automobile and $17,000 in money orders.

Several errors are assigned including (1) The erroneous denial of a motion to suppress evidence concerning the money orders on the theory that the Government was directed to this evidence as a consequence of the unlawful seizure of other money orders from appellant on another occasion;[2] (2) The admission into evidence of several money orders, not claimed to be hidden assets, for the asserted purpose of providing exemplars of appellant's handwriting, and to prove intent or motive with the result that, although some were later ordered stricken, the jury was permitted to learn that appellant had enjoyed a cash flow of $126,000 during the period in which he claimed to be without substantial assets; (3) An erroneous instruction concerning the ownership of the Cadillac automobiles allegedly in conflict with Ohio's certificate of title statute, Rev.Code § 4505.04; and (4) The erroneous receipt into evidence, before appellant took the stand, over objection, of an exhibit[3] in which appellant admitted his prior felony conviction for tax fraud.

We reverse and order a new trial, sustaining the fourth contention. In Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948), the Court said,

> The state may not show the defendant's prior trouble with the law, [or] specific criminal acts * * * even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; * * * [but] that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice. 335 U.S. at 475, 69 S.Ct. at 218.

See also United States v. Fisher, 377 F.2d 285 (6th Cir. 1967); Barnes v. United States, 124 U.S.App.D.C. 318, 365 F.2d 509 (1966); Lyda v. United States, 321 F.2d 788 (9th Cir. 1963).

■ The Government, however, urges that the admission of exhibit 16 was proper under an exception to the general rule prohibiting evidence of a defendant's prior criminal activity. It seeks to justify the admission of this evidence to show intent, design, scheme, motive or knowledge on the part of the defendant, relying on United States v. Iacullo, 226 F.2d 788 (7th Cir. 1955), cert. den. 350 U.S. 966, 76 S.Ct. 435, 100 L.Ed. 839 (1956). In the instant case, the information that appellant has been incar-

---

2. For a more detailed factual description of the alleged illegal seizure, see United States v. Milton, 253 F.Supp. 89 (N.D. Ohio 1966), affirmed 382 F.2d 976 (6th Cir. 1967).

3. Government's Exhibit 16
   Alex Shondor Birns
   Old — 24651 Lakeshore Blvd.
   New — 16913 Judson Drive
         Cleveland 28, Ohio
   Amount paid
   Taxpayer to pay 20% of net income at present per attached financial statement. Taxpayer will pay 30% of any additional net income as earned over and above present income. Upon such increases in income, taxpayer will notify the Internal Revenue Service or Justice Department. Item #5

1. All assets belonging to said taxpayer were seized and sold at public auction.
2. Levy served on bank account of said taxpayer which was acknowledged by Cleveland Trust Bank who in turn submitted approximately $11,-000.00.
3. Taxpayer was incarcerated at Atlantic Federal Penitentiary, Atlanta, Georgia. Three years sentence (no parole).
4. Presently taxpayer has no assets that can be located for distraintable action.
5. According to taxpayer's financial statement, it reveals that his source of income is from two companies, total gross income $16,900.00.

created at Atlanta Federal Penitentiary for three years had no logical tendency to establish that he had made false statements as charged in the indictment. United States v. Accardo, 298 F.2d 133 (7th Cir. 1962), and since he had not elected to take the stand its effect could only be prejudicial. Tallo v. United States, 344 F.2d 467 (1st Cir. 1965). We observe that counsel for the Government stated that he had no objection to the deletion from the exhibit of the reference to appellant's prison sentence and if it should be offered and be found relevant on a retrial of the indictment, the court should cause it to be deleted.

Although we reverse for the reason stated, we comment briefly on appellant's other contentions since the case may be tried again.

■■ We believe that appellant's contention that money orders introduced at the trial should have been suppressed because they were disclosed as the result of other money orders illegally seized is without merit. If we assume, as did the District Judge, that other money orders were illegally seized by the Cleveland policemen, there is nevertheless evidence to support his finding that the money orders admitted at the trial were discovered through sources independent of that search. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). The finding that the evidence employed was not fruit of the poisonous tree, Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939), renders it properly admissible. Cf. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Appellant's next claim of error relates to the admission, for collateral purposes, of evidence as to a number of financial transactions. The court admitted testimony concerning a series of 63 checks made payable to one Jane Ann Collins, a name allegedly employed by defendant. Since this testimony and the 63 exhibits were subsequently ordered stricken, we assume they will not be received in the same circumstances over objection if offered in a new trial. And since we reverse on other grounds, it is unnecessary to determine whether the court's admonition to the jury to "completely disregard the witness's testimony regarding those 63 checks * * *" was sufficient to dispel any taint of prejudice resulting from its earlier admission. See Nash v. United States, 54 F.2d 1006 (2d Cir. 1932).

Appellant also objects to the admission of testimony of Government witnesses Barricelli, Blane and Kirsch in regard to a number of negotiable instruments which appellant endorsed. The court's instruction limited this evidence (1) to lay a foundation for the opinion of an expert expected to testify about appellant's handwriting and (2) to bear upon the intent, scheme or plan that may have been used by appellant.

It does not appear that defendant's handwriting was an issue with reference to the documents described in the indictments. However, assuming a dispute on this issue, it is evident that the Government possessed other examples of appellant's signature which did not have the collateral and highly prejudicial effect of advising the jury of the substantial cash flow represented by the protested evidence.

■ Although evidence of a defendant's acts similar to those charged in the indictment under some circumstances may be admissible to prove intent, scheme or plan, the evidence offered was not of acts similar to those charged but merely evidence from which the jury might conclude that appellant's financial dealings were conducted behind a smokescreen. This might make a jury suspicious of any representation he might make, but there was no defense asserted here that appellant did not intend to misrepresent his assets and unless the question of intent is in dispute, evidence concerning the commission of similar acts at other times should not ordinarily be admitted. United States v. Byrd, 352 F.2d 570 (2d Cir. 1965).

Finally, we consider the contention that the trial court erred in permitting the introduction of evidence to establish the ownership of a motor vehicle despite the state law[4] which deems the certificate of title as conclusive proof of ownership.

There was testimony that the titleholder acquired title to the 1958 and 1960 Cadillacs as an accommodation to appellant who made the payment on the time purchase contract, paid the insurance premiums, paid for repairs and exercised effective control. Under the charge of the court, the jury could have found that the 1958 and 1960 Cadillac automobiles were assets owned by defendant.

 State law controls in determining the nature of the legal interest which one may have in the property involved here. Cf. Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); United States v. Durham Lumber Co., 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960); United States v. Trilling, 328 F.2d 699 (7th Cir. 1964).

The Ohio Certificate of Title law was enacted to prevent thefts and frauds in the transfer of title to motor vehicles, and does not preclude the existence of constructive trusts with regard to the ownership of such vehicles. In re Lee, Inc., 129 F.Supp. 920 (D.C.1955). Accordingly, we find no error in the admission of the evidence relating to the two Cadillac automobiles nor in the charge which would have permitted the jury to find that at the relevant time appellant had such an interest in and control and ownership of the vehicles as to make them his property in the sense that they were assets available to him for the payment of his debts and at that time he then knew he had such interest and ownership and made the misrepresentation willfully and knowingly.

Reversed and remanded.

JOHN W. PECK, Circuit Judge (concurring).

I am in complete agreement with so much of the majority opinion as deals with the merits of this appeal, but express reservations concerning the portion of the opinion purporting to offer guidance to the District Judge at retrial.

4. Ohio Revised Code, § 4505.04 provides: No person acquiring a motor vehicle from the owner thereof * * * shall acquire any right, title, claim, or interest in or to said motor vehicle until after such person has issued to him a certificate of title to said vehicle * * *. No court of law in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any motor vehicle sold or disposed, or mortgaged or encumbered, unless evidenced (1) by a certificate of title * * * issued in accordance with § 4505.01 to § 4505.19.