UNITED STATES of America,
Plaintiff-Appellee,

v.

Lawrence Jerome RING,
Defendant-Appellant.

No. 74–1277.

United States Court of Appeals,
Sixth Circuit.

April 2, 1975.

Jerry D. Kizer, Jr. (Argued), Spragins, Menzies & Rainey, Jackson, Tenn. (Court appointed), for defendant-appellant.

Thomas F. Turley, U. S. Atty., Glen G. Reid, Jr., (Argued) Memphis, Tenn., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, McCREE, Circuit Judge, and RUBIN *, District Judge.

McCREE, Circuit Judge.

 This is an appeal from a conviction, by jury, of mailing threatening letters in violation of 18 U.S.C. § 876, par. 3.[1] Appellant contends, *inter alia*, that the district court erred in admitting, during the prosecution's case in chief, evidence that he had previously threatened over the telephone a person other than the recipient of the threatening letters that were the reason for the indictment. The dispositive issue is whether this evidence of prior threats was admissible to show the accused's criminal intent. We hold that it was not, and that evidence that the accused had made threats in the past was inadmissible under the "intent" exception to the general rule excluding evidence of prior misconduct. Although intent is an element of the offense charged in the indictment, intent was not a genuinely contested issue in the case because appellant had not asserted mistake or an innocent state of mind as a defense. When no such defense is asserted, the element of intent may be inferred from the act of mailing but may not be proved in the prosecution's case in chief by similar act evidence.

The significant facts are not disputed and may be stated briefly. Appellant was indicted by a federal grand jury and charged with depositing in the United States mails, on or about May 14 and May 15, 1971, two unsigned, undated, threatening letters addressed to Walter Brock of Jackson, Tennessee. At trial, Brock testified that he received two letters reading:

*Letter No. 1*

Brock: Hiding at home behind your wife's skirts won't help you. I have an army rifle and two rifle grenades so all I have to do is to place one into the front windshield of your car. If your family gets killed in the process, I'm sorry, but you've taken away my family. I don't know when it'll be, but rest assured, YOU ARE GOING TO DIE.

*Letter No. 2*

Brock: Before too much longer you will see a sign indicating that I mean exactly what I've said. You are going to die! . . . After I've killed you, I will turn myself over to the police for I have nothing to live for right now except to kill you [sic] ass.

The government introduced evidence that appellant's fingerprints were found on the two envelopes and the letters that Brock received. The only other evidence offered to the jury to prove that appellant had prepared and mailed the letters was the testimony of Peggy Dunavan that appellant had threatened her eight or nine times over the telephone about six months before the threatening letters were received by Brock. Although appellant testified at trial, he shed no light on his involvement in the mailing of the letters in May 1971, because he claimed amnesia for all events before August 23, 1971. For this reason the record is almost barren of evidence illuminating the circumstances under which the letters were mailed or indicating whether appel-

---

* The Honorable Carl B. Rubin, United States District Judge, Southern District of Ohio, sitting by designation.

1. 18 U.S.C. § 876, par. 3 provides in pertinent part:
 Whoever knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined not more than $1,000.00 or imprisoned not more than five years, or both.

lant, or anyone else, had a motive for mailing threatening letters to Brock.

The questions presented for review are: (1) whether the district court erred in admitting the evidence of prior threats made by appellant; (2) whether the evidence was sufficient to support the jury's verdict; and (3) whether appellant, although apparently suffering from amnesia, was competent to stand trial.

As a general rule, in jury trials, evidence of a criminal defendant's prior misconduct is inadmissible in the prosecution's case in chief to show the accused's bad character or criminal propensity. The reason is "not because it has no appreciable value but because it has too much." 1 J. Wigmore, Evidence § 194 (3d ed. 1940). It tends to confuse the issue of guilt or innocence of the specific offenses charged and to weigh too heavily with the jury. Mr. Justice Jackson in Michelson v. United States, 335 U.S. 469, 475–76, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948), stated the general rule and its rationale:

> The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice. (Footnotes omitted).

*See also* People v. Zackowitz, 254 N.Y. 192, 172 N.E. 466 (1939). (Cardozo, J.).

Exceptions to this rule, however, let in evidence of a defendant's prior misconduct to show motive, intent, absence of mistake or inadvertence, identity of the offender or a common plan, pattern or scheme.[2] United States v. Nemeth, 430 F.2d 704 (6th Cir. 1970); United States v. Wells, 431 F.2d 432 (6th Cir. 1970); United States v. Birns, 395 F.2d 943 (6th Cir. 1968); United States v. Neal, 344 F.2d 254 (6th Cir. 1965). *See also* People v. Molineux, 168 N.Y. 264, 61 N.E. 286 (1901) (a leading American decision discussing the exceptions). *See generally* 2 J. Wigmore, Evidence §§ 300 et seq. (3d ed. 1940); McCormick, Evidence § 157 (1954); Stone, The Rule of Exclusion of Similar Fact Evidence: America, 51 Harv.L.Rev. 988 (1938). The exceptions, when properly applied, are justified by a legitimate need for the evidence that outweighs the perils of undue prejudice to the accused. In reaching this accommodation, the law naturally seeks to shield the accused from unnecessary prejudice. Accordingly, the admission of evidence of a defendant's prior acts of bad conduct, under the specified exceptions, requires limiting instructions cautioning the jury not to consider the evidence for improper purposes. United States v. Nemeth, *supra*; United States v. Sims, 430 F.2d 1089, 1092 (6th Cir. 1970).

The mere recitation by the prosecution that evidence of the accused's bad acts is offered under an ex-

---

**2.** Compare United States v. Woods, 484 F.2d 127 (4th Cir. 1973), holding that evidence of prior misconduct in that case was admissible under a specified exception, but stating, in dictum, that the decision rested on the broader proposition, often advanced by commentators, that "evidence of other offenses may be received, if relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime." 484 F.2d at 134. *See generally* McCormick, Evidence § 157, *supra* at p. 332. We are not called upon in this appeal to determine whether the categorical exceptions stated in our opinion above are exhaustive of the situations when evidence of prior bad acts may properly be admitted. *See generally* Stone, The Rule of Exclusion of Similar Fact Evidence: America, 51 Harv.L.Rev. 998 (1938); Note, Developments in Evidence of Other Crimes, 7 U.Mich.J.L.Ref. 535 (1974).

ception is not sufficient for its admission. In United States v. Birns, 395 F.2d 943 (1968), for example, we considered whether evidence that the accused had been previously convicted for income tax fraud was admissible in a prosecution for perjury under the exceptions "to show intent, design, scheme, motive, or knowledge on the part of the defendant." 395 F.2d at 945. We held the evidence inadmissible because the prior tax fraud convictions had "no logical tendency" to establish that the defendant had committed perjury and were only prejudicial. To show "intent" with evidence of other misconduct, there must be a substantial similarity between the offenses charged in the indictment and the prior misconduct. United States v. Birns, *supra*; United States v. Kasouris, 474 F.2d 689 (5th Cir. 1973); United States v. Johnson, 453 F.2d 1195 (5th Cir. 1972). *See generally* 2 J. Wigmore, Evidence § 302, at p. 200 (3d ed. 1940). We have also held that "to show a consistent pattern of conduct relating to the offense charged the evidence must be of prior similar acts reasonably near in time to the offense charged." United States v. Nemeth, 430 F.2d 704, 705 (1970). And, evidence of prior misconduct may not be admitted under any exception unless the matter for which the evidence is offered is "in issue", United States v. Nemeth, *supra* at 705. Finally, even when it is admissible under an exception, the trial court, in its discretion, may exclude the evidence of defendant's prior misconduct if its potential to foster unfair prejudice against the accused outweighs the probative value to be gained by its admission. *See generally*, McCormick, Evidence § 157, *supra* at p. 332–33.[3]

Here, the evidence of threats against Peggy Dunavan was offered, in the prosecution's words, to show "state of mind, motive and intent, and propensity to commit the offenses charged." This evidence was inadmissible to show appellant's bad character or propensity to threaten others, since it was introduced during the prosecution's case in chief and the defendant had not opened the issue of his character. Michelson v. United States, *supra*. The district court expressly instructed the jury that the evidence of prior threats could not be considered in determining whether appellant committed the "substantive acts" charged but, instead, only to show the defendant's "motive or intention."[4] The

---

**3.** McCormick cites as illustrating this principle the following statement from State v. Goebel, 36 Wash.2d 367, 218 P.2d 300, 306, syl. 5 (1950) (Hill, J.):

. . . [T]his class of evidence, where not essential to the establishment of the state's case, should not be admitted, even though falling within the generally recognized exceptions to the rule of exclusion, when the trial court is convinced that its effect would be to generate heat instead of diffusing light, or, . . . where the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it. This is a situation where the policy of protecting a defendant *from undue prejudice conflicts with the rule of logical relevance*, and a proper determination as to which should prevail rests on the sound discretion of the trial court, and not merely on whether the evidence comes within certain categories which constitute exceptions to the rule of exclusion.

**4.** Following the admission of Ms. Dunavan's testimony, the court instructed the jury as follows:

THE COURT: Ladies and gentlemen, the Court has previously instructed you that you will not regard any testimony or purported testimony with respect to any alleged wrongful activities attributed to the defendant for any purposes considering whether or not he performed any of the substantive acts that are charged against him in this indictment. Mr. Ring is here and subject only to the matter and charges, and your consideration only pertains to the matters and charges contained in the indictment. Therefore, if it were testified with respect to any other activities, or alleged wrongful activities, on the part of the defendant, they have no bearing and will not be considered by you as to guilt or innocence on the doing of any of the acts charged in the indictment.

They may be considered only if they are related to the nature of the charges here made as to the motive or intention of the defendant.

question thus narrows to whether the prior threats were admissible for these purposes.

■■■ Proof of motive, meaning an impetus to perform the criminal act, may aid the jury in establishing the defendant's identity as the person who committed the offense charged and may also demonstrate "deliberateness, malice, or a specific intent constituting an element of the crime." McCormick, Evidence § 157, p. 330 (1954). *Cf.* Spies v. New York, 317 U.S. 492, 498, 63 S.Ct. 364, 87 L.Ed. 418 (1943). Thus, evidence that appellant harbored ill will against Brock and had strong reason to threaten him would be relevant not only to establish that appellant mailed the letters to Brock but also, if the act were conceded or proven, to negative any claim of mistake or inadvertence.

Here, Peggy Dunavan testified, on direct examination, not that appellant had reason to threaten Brock but only that appellant had threatened her by telephone several times:

Q Let me ask you, if, during the period of September, 1970, whether or not you received any threatening communications from Lawrence Jerome Ring?

A Yes, sir.

Q On one occasion or more than one occasion?

A On about eight or nine, in all.

Q Okay.

And how did you receive them?

A By telephone.

Q And what was the substance of these communications?

A I don't understand you, what do you mean?

Q Well, what—Well, let me ask you:

If the person on the other end of the telephone identified himself?

A Yes, sir. He always said it was "Jerry Ring."

Q Okay.

Had you known Jerry Ring prior to these telephone conversations?

A Yes, sir.

Q Did you recognize the voice of the individual making the telephone call?

A Yes, sir.

Q And who was, or who was the person making the telephone call, according to your various recognition?

A Jerry.

Q What did he say to you?

A Well, the first time he told me he could shoot me down, and, just like he shot the Vietcongs down, and laugh at me die.

· Q All right.

A ·And the next time, that happened that night, and the next day he changed it to where:

"Peggy, you had better get your affairs in order, because you don't have long to live."

Or something like that.

On cross-examination she added that the only reason she could find for appellant threatening her was "over a woman" named Joyce. Other testimony at trial indicated that Brock's wife was named Joyce.

■■■ The government argues that the evidence of prior threats showed a motive for appellant to threaten Brock because "[t]he threatening letters involved in the indictment concerned the wife of one of the parties involved," and "Peggy Dunavan testified that the threats made to her by the defendant involved 'Joyce'", which was the name of the victim's wife. But the letters received by Brock do not indicate that the sender had any relationship with Brock's wife. Instead, the letters suggest, if anything, that Brock had interfered in some way with the sender's family. From all that appears in the record, the prior threats have "no logical tendency" to show a motive, *cf.* United States v. Birns, *supra*, and, accordingly, we hold that the evidence was inadmissible for that purpose.

■■■ It remains to be considered whether the prior threats were admissible to show appellant's criminal intent. We find no merit in appellant's argument that threats by telephone six

months before the charged mailing of threatening letters were not sufficiently similar to the offenses charged and not reasonably close in time. *See* 2 J. Wigmore, Evidence § 302 *supra.* But we conclude the admission of the challenged evidence was erroneous for the more fundamental reason that intent was not a genuinely contested issue.

■ The government apparently does not dispute the proposition that evidence of prior misconduct is admissible to show intent only when intent is in issue. It cites the following statement of the rule in United States v. Nemeth, 430 F.2d 704, 705 (1970) (emphasis added).

The general rule is that evidence of prior criminal activity is inadmissible to prove the commission of a later offense. The only exceptions to that rule are that when intent, motive, or lack of mistake are *in issue*, evidence of prior similar and related offenses tending to show a consistent pattern of conduct is admissible if accompanied by appropriate cautionary instructions. (Citations omitted).

The emphasized language makes it clear that evidence of prior bad acts may not be introduced unnecessarily as a pretext for placing highly prejudicial evidence of a defendant's bad character before the jury.

■ Yet, the government argues that the mere fact that intent is an element of the offenses charged is in itself sufficient for purposes of invoking the exception permitting evidence of a defendant's prior misconduct to show intent. The dispositive issue, in our view, is this: May the "intent" exception be invoked by the prosecution to permit admission of evidence of an accused's prior misconduct where the requisite criminal intent would normally be inferred from the criminal act, if proven, of mailing threatening letters and where, at the same time, the defendant has not asserted the defense of an innocent state of mind? We conclude it may not.

■ Certainly, intent is in issue whenever it cannot readily be inferred from proof of the criminal act charged.

This class of cases was aptly described in the leading decision of People v. Molineux, *supra*:

. . . There are cases in which the intent may be inferred from the nature of the act. There are others where willful intent or guilty knowledge must be proved before a conviction can be had. Familiar illustrations of the latter rule are to be found in cases of passing counterfeit money, forgery, receiving stolen property and obtaining money under false pretenses. An innocent man may, in a single instance, pass a counterfeit coin or bill. Therefore, intent is of the essence of the crime, and previous offenses of a similar character by the same person may be proved to show intent. (Commonwealth v. Jackson, 132 Mass. 16; Commonwealth v. Bigelow, 8 Metc. 235; Commonwealth v. Stone, 4 Metc. 43; Helm's Case, 1 City Hall Rec. 46; Smith's Case, 1 City Hall Rec. 49; Coffey's Cases, 4 City Hall Rec. 52; Dougherty's Case, 4 City Hall Rec. 166.) So in a case where the defendant is charged with having received stolen property, guilty knowledge is the gravamen of the offense and *scienter* may be proven by other previous similar acts. (Commonwealth v. Johnson, 133 Pa. 293, 19 A. 402; Coleman v. People, 58 N.Y. 555; Copperman v. People, 56 N.Y. 591; People v. McClure, 148 N.Y. 95, 42 N.E. 523.) In cases of alleged forgery of checks, etc., evidence is admissible to show that at or near the same time that the instrument described in the indictment was forged or uttered the defendant had passed, or had in his possession, similar forged instruments, as it tends to prove intent. (Commonwealth v. Russell, 156 Mass. 196, 30 N.E. 763; People v. Everhardt, 104 N.Y. 591, 11 N.E. 62; Reg. v. Colclough, 15 Cox Crim.Cas. 92.) On the trial of an indictment for obtaining goods by false representations, similar representations made by the defendant to creditors from whom goods had been previously purchased by him were held admissible to prove intent. (Mayer v.

People, 80 N.Y. 364.) *It will be seen that the crimes referred to under this head constitute distinct classes in which the intent is not to be inferred from the commission of the act and in which proof of intent is often unobtainable except by evidence of successive repetitions of the act.* (Emphasis added).

Here, on the contrary, if the act were proven, intent would naturally be inferred from the mailing of the threatening letters. What was said in *Molineux, supra,* 168 N.Y. at 299, 61 N.E. at 296, which held inadmissible evidence of prior crimes to show intent in a prosecution for poisoning, applies, as well, in this case:

> Could proof of any number of repetitions of this act add anything to the conclusive inference of criminal intent which proof of the act itself affords? Can it be possible that in the face of such irrefragable *indicia* of murderous intent it is still necessary or proper to prove the commission of other similar crimes to establish intent? These questions carry their own answers. If intent may not be inferred from such an act as this, then there is no such thing as inference of intent from the character of the act.

A different case would be presented if the defendant had raised the issue of intent by pleading that the act, if done, was done innocently, by mistake or accident. It might have been argued, for example that appellant wrote the letters, decided not to mail them, and they were then mailed inadvertently. No such defense was raised here, however, and we find pertinent the observations of Lord Sumner in Thompson v. The King, [1918] App.C. 221, 232, cited in McCormick, *supra* at 331 n. 24:

> "Before an issue can be said to be raised, which would permit the introduction of such evidence so obviously prejudicial to the accused, it must have been raised in substance if not in so many words, and the issue so raised must be one to which the prejudicial evidence is relevant. The mere theory

that a plea of not guilty puts everything material in issue is not enough for this purpose. The prosecution cannot credit the accused with fancy defences in order to rebut them at the outset with some damning piece of prejudice."

Squarely in point is United States v. Fierson, 419 F.2d 1020 (7th Cir. 1969). There, the defendant was convicted of impersonating an FBI officer. At trial, over defendant's objection, the government in its case in chief elicited testimony that eleven months before the date of the offense charged, the defendant had impersonated an FBI officer under circumstances similar to those alleged in the indictment. Although declining to conclude that the passing of eleven months time required exclusion of the evidence as too remote, the court went on to hold as follows:

> More than this, however, is required. Obviously intent must be an element of the offense to justify the admission of this type of evidence. Prior criminal acts cannot be proved to show intent when intent is not an element of the offense charged. . . .

> Equally obvious is the fact that when intent is a material element of the offense, it is part of the prosecuting attorney's case to be proved in chief lest he find himself out of court at the close of his evidence.

> However, to justify admission into evidence of an accused's prior criminal acts to establish willfulness and intent, it is necessary that willfulness and intent be more than merely formal issues in the sense that the defendant is entitled to an instruction thereon. . . .

> When, as in this case, the government has ample evidence to take the case to the trier of fact for its deliberation, a plea of not guilty cannot, by itself, be construed as raising such a keen dispute on the issue of willfulness and intent so as to justify admission of this type of evidence. . . .

419 F.2d at 1022–23 (citations omitted). *See also* United States v. Magee, 261

F.2d 609 (7th Cir. 1958). We find this reasoning persuasive and we agree.

■■■ There is, however, some ambiguous authority. 2 J. Wigmore, *supra* § 307, at p. 207, states:

§ 307. *Order of Evidence; Chief or Rebuttal.* In a number of rulings involving these principles, the question has been raised whether it is proper to introduce the evidence of other offenses during the prosecution's case in chief. The argument against doing so is that if the accused's evidence should deny the doing of the act, then no issue of Intent can arise, hence that the evidence of former offences could only prejudice the accused unless it involved Motive or Design. The answer is that intent in virtually all offences is material, and is therefore a part of the case to be proved in chief; and that unless the precise defence be disclosed in advance, the prosecution may in fairness assume that Intent may come into issue.

Although we think this statement is valid insofar as it concerns the class of cases where intent is not normally inferable from the nature of the act charged, if the act is proven, we expressly decline to follow it if it is interpreted to suggest that intent is in issue whenever it is an element of the offense charged. An exception this broad would virtually swallow the rule against admission of evidence of prior misconduct. Evidence of prior bad acts is generally excluded because, although bad character has some probative value in determining guilt, the evidence is simply too prejudicial. When some other issue of which prior misconduct is probative is raised and the evidence is therefore needed for a purpose other than to show bad character, the balance shifts toward admissibility, aided by appropriate cautionary instructions, despite the dangers of prejudice. But intent is not in issue when evidence of intent is inferable if the proscribed act is proven and defendant does not claim mistake or inadvertence.

■■■ We reach our decision not because the trial court abused its discretion in weighing relevancy and prejudice but because the exceptions relied upon by the government are inapplicable.[5] The evidence of prior threats did not show a motive in appellant, and was not required to prove intent because, if the act of mailing were proven, intent would not be at issue because of the nature of the crime and because the defense of an innocent mind was not asserted by the defendant.

■■■ Appellant also asserts that the evidence presented at trial was insufficient to sustain the conviction because the sole proof that appellant mailed the letters was the presence of his fingerprints on the envelopes when they were received by Brock. Appellant contends that the statutory element of mailing the letters was not proven by any independent evidence, as he contends is re-

---

**5.** As McCormick, *supra* 332–33, has stated:

Accordingly, some of the opinions recognize that the problem is not merely one of pigeon-holing, but one of balancing, on the one side, the actual need for the other-crimes-evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes-evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility.

Such a balancing calls for a large measure of individual judgment about the relative gravity of imponderables. Accordingly, some opinions stress the element of discretion. It should be recognized, however, that this is not a discretion to depart from the principle that evidence of other crimes, having no substantial relevancy except to ground the inference that accused is a bad man and hence probably committed this crime, must be excluded. The lee-way of discretion lies rather in the opposite direction, empowering the judge to exclude the other crimes evidence, even when it has substantial independent relevancy, when in his judgment its probative value for this purpose is outweighed by the danger that it will stir such passion in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial. (Footnotes omitted).

quired by *Freeman v. United States,* 20 F.2d 748 (3d Cir. 1927), and *Whealton v. United States,* 113 F.2d 710 (3d Cir. 1940). However, it is well established that proof of mailing and causing mailing may be made by circumstantial evidence. *Petschel v. United States,* 369 F.2d 769 (8th Cir. 1966); *Marvin v. United States,* 279 F.2d 451, 454 (10th Cir. 1960); *Greenbaum v. United States,* 80 F.2d 113, 125 (9th Cir. 1935); *Cochran v. United States,* 41 F.2d 193, 205 (8th Cir. 1930).

In *Petschel, supra,* the defendant's own testimony disclosed that he wrote the letter, enclosed it in an envelope addressed to the victim, and placed it in the hands of one Scott, who according to the defendant, was to *personally* deliver it to the victim. The court held that the jury was warranted in determining that the defendant set in motion forces which foreseeably would involve the use of the mails. *Cf. Pereira v. United States,* 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1953).

We have held that evidence, though largely circumstantial, was sufficient to convict a defendant of murder by sending through the mails a bomb which exploded when the victim opened the package containing the bomb. *United States v. Stifel,* 433 F.2d 431 (6th Cir. 1970). Although the defendant denied making the device and there was no direct evidence of the mailing of the bomb, receipt of the package and evidence of other threats against the decedent were shown.

 In the case before us now, the undisputed testimony discloses the receipt by Brock of two unsigned letters sent through the mails. The letters were tied to defendant Ring through the existence of his fingerprints on both notes and envelopes. As the district court observes, "the only reasonable inference to be drawn was that Ring caused, or was directly associated with the mailing of the threatening letters." We agree with the district court on this issue. It is our duty to review the evidence supporting jury verdicts of guilty from the point of view most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). We are convinced there is sufficient evidence to prove the mailing element.

 We also decline to reach the competency issue raised by appellant since it is unnecessary for our disposition, and on retrial appellant may no longer have amnesia.[6]

Reversed and remanded for a new trial.

---

6. An accused is generally competent to stand trial unless he is "unable to understand the proceedings against him or properly to assist in his own defense," within the meaning of 18 U.S.C. § 4244. The Supreme Court in *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), elaborated on this standard:

> [The] test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as a factual understanding of the proceedings against him.

Here, the district court considered two pretrial psychiatric examinations of appellant and competency hearings, the testimony of physicians at the trial, and the judge's own observation of appellant. The court determined that appellant's amnesia was "apparently genuine," but that appellant was nevertheless competent to stand trial since he had "an ability to understand and ability to assist his capable counsel with respect to the charges made against him, and most phases of the case except the happening and incidence directly connected on or about May 14 and May 15, 1971, with the alleged criminal activity."

Appellant argues that, because of his amnesia, he was unable to recall any pertinent events occurring before Brock received the threatening letters and that, for this reason, he could not meaningfully consult and assist his counsel. He maintains, therefore, that the standard of competency applied to him violated his constitutional rights to effective assistance of counsel and to due process of law. Although it is unnecessary to resolve them in this case, we recognize that this argument raises substantial and important questions. *See e. g., United States v. Sullivan,* 406 F.2d 180 (2d Cir. 1969); *Wilson v. United States,* 129 U.S.App.D.C. 107, 391 F.2d 460 (1968); *United States ex rel. Parson v. Anderson,* 354 F.Supp. 1060 (D.Del.1972.).