OPINION
{¶ 1} The defendant-appellant, Cory Trapp ("Cory"), appeals the judgment of the Tiffin Municipal Court ordering him to pay damages in the amount of $4,280.00 to the plaintiff-appellee, Jeremy Twigg ("Jeremy").
 {¶ 2} Jeremy and Cory entered into a contract on or about February 20, 1998. Jeremy was to sell a 1987 Chevrolet Camaro Iroc Z-28 ("car") to Cory, and Cory was to make installment payments of $75.00 per week until the total purchase price of $4,280.00 was paid in full. Robert Twigg, Sr. ("Robert"), Jeremy's father, had possession of the car and title in his name, and he transferred possession and title to Cory. Cory contends he paid Robert $1,000.00 in cash for the car, which is noted on the back of the title; however, Robert contends Cory paid no consideration. The testimony is conflicting as to when Cory signed the contract and when the transfer of possession and title occurred.
 {¶ 3} Jeremy filed a complaint against Cory on September 8, 2003, seeking damages based on breach of contract and unjust enrichment. On October 7, 2003, Cory filed his answer and counterclaim. In his answer, Cory argued that Jeremy lacked legal capacity to enter into the written contract because he did not own the car, and because Jeremy did not own the car he had made a fraudulent representation. In his counterclaim, Cory sought compensatory and punitive damages against Jeremy based on fraud. The litigation was stayed for approximately one year while Jeremy served a tour of duty in the military, and on October 14, 2005, the case proceeded to trial. Jeremy testified on his own behalf and presented testimony from Cory, Robert, and Kelly Twigg ("Kelly").[1] The trial court admitted three exhibits into evidence: a copy of the contract, marked as Plaintiff's Exhibit A; a copy of the title, marked as Joint Exhibit Z; and a printout from the Bureau of Motor Vehicles, marked as Defendant's Exhibit 1. The trial court found that regardless of whose name was on the title, everybody involved believed the car to be Jeremy's; that a prior agreement made between Jeremy and Robert concerning the sell of the car was clear; that no money had been transferred to Robert; and that Jeremy was entitled to the $4,280.00 based on either the contract or unjust enrichment. The court filed its judgment entry on October 31, 2005. Cory appeals the trial court's judgment and asserts the following assignments of error:
The trial court erred in finding that the plaintiff was theowner of the subject motor vehicle.
 The trial court erred in finding for the plaintiff on hisunjust enrichment claim.
 The trial court erred in dismissing the defendant'scounterclaim for fraud in the inducement.
 {¶ 4} In the first assignment of error, Cory contends that a "certificate of title is a prerequisite to any claim of ownership of a titled motor vehicle." Cory contends that Jeremy has not had a certificate of title for the car since 1996. Cory argues that R.C. 4505.04(B) prohibits any court "from recognizing any right of ownership in a vehicle without proper evidence of ownership[.]" Therefore, Cory contends Jeremy lacks "standing" to bring a cause of action against him. In response, Jeremy contends R.C. 4505.04 does not apply because he is seeking payment based on the written contract executed between the parties. Jeremy contends that Cory's argument "would allow a buyer in such a situation to obtain a motor vehicle for free."
 {¶ 5} The applicability of R.C. 4505.04(B) is a matter of law, so we review the trial court's judgment de novo in that regard. In reviewing a judgment de novo, an appellate court conducts in independent review, giving no deference to the trial court's determination. State v. McKinley, 3rd Dist. No. 8-05-14, 2006-Ohio-2507, at ¶ 7 (citing State v. Thymes, 9th Dist. No. 22480, 2005-Ohio-5505, at ¶ 22 (citation omitted)). However, we defer to the trial court's determinations concerning the weight of the evidence and credibility of the witnesses because it is able to observe the witnesses' demeanors and hear the testimony. State v. DeHass (1967), 10 Ohio St. 2d 230,227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 6} R.C. 4505.04(B) states in pertinent part:
[s]ubject to division (C) of this section, no court shallrecognize the right, title, claim, or interest of any person inor to any motor vehicle sold or disposed of, or mortgaged orencumbered, unless evidenced:
 (1) By a certificate of title, an assignment of a certificateof title made under section 4505.032 of the Revised Code, amanufacturer's or importer's certificate, or a certified receiptof title cancellation to an exported motor vehicle issued inaccordance with sections 4505.01 to 4505.21 of the Revised Code;
 (2) By admission in the pleadings or stipulation of theparties[.]
The evidence establishes that Jeremy had the certificate of title to the car in 1994. In May 1996, he transferred title to Cory, and in August 1996, Cory transferred title to Kelly. Kelly retained title until November 1997, when she transferred it to Robert so he could sell the car. The evidence indicates, and the trial court apparently believed, that Jeremy and Kelly live in southern Ohio, they were unable to drive the car in the winter, they opted to sell the car in northwestern Ohio, and they asked Robert for his help. Robert transferred title to Cory on March 27, 1998. At trial, Jeremy testified that the written contract was not a complete agreement because part of the agreement was intentionally omitted. Trial Tr., Feb. 21, 2006, at 160. Jeremy testified that the parties' oral agreement was for Robert to transfer title to Cory, and Cory was aware that Robert had title in his name. Id. at 160, 163.
 {¶ 7} In this case, R.C. 4505.04(B) is inapplicable. The statute was intended to "prevent thefts and frauds in the transfer of title to motor vehicles." United States v. Birns
(6th Cir. 1968), 395 F.2d 943, 947. In Birns, the court held that R.C. 4505.04 "does not preclude the existence of constructive trusts with regard to" vehicle ownership. Id. In this case, the evidence establishes a constructive trust whereby Robert held title and possession of the car for Jeremy while Jeremy found a buyer and negotiated a purchase price. Also, in its findings, the trial court stated:
[t]he fact of the matter is, I think it's clear from thetestimony, that regardless of how the car was actually titled it— whether the plaintiff's name, his wife's name, his father'sname, yes, that was the legal ownership, but in everyone's minds,including the defendant, it was the plaintiff, his car. And for amatter of convenience had been titled in either his wife's nameor his father's name.
Trial Tr., 184-185.
 {¶ 8} Jeremy and Cory clearly had a written contract, which Cory admitted in his answer. See Def.'s Answer, Oct. 7, 2003, at ¶ 1. The contract provisions established that Cory would pay the purchase price of $4,280.00 through installment payments. See Trial Tr., at Pl.'s Ex. A. The contract clearly contemplates that Cory would receive title to the car, which he did. The fact that the car was transferred from Robert's name rather than Jeremy's is irrelevant in this case. Cory has clearly received the benefit of his bargain.
 {¶ 9} As to whether Cory paid $1,000.00 of the purchase price to Robert, the trial court apparently believed Robert, who testified that Cory had not paid any money in consideration, and disbelieved Cory, who testified that he had paid Robert $1,000.00 in cash. We defer to the trial court's decision on credibility. Therefore, we overrule the first assignment of error.
 {¶ 10} Having overruled the first assignment of error, the second and third assignments of error are moot. The judgment of the Tiffin Municipal Court is affirmed.
Judgment Affirmed.
 Rogers, J. dissents.
 Shaw, J., concurs.
[1] Kelly is Cory's sister and Jeremy's wife.